**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| JEFFREY K.,[1] | : | Case No. 3:24-cv-00124 |
| | : | |
| Plaintiff, | : | Magistrate Judge Caroline H. Gentry |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

---

**DECISION AND ORDER**

---

Plaintiff filed an application for Supplemental Security Income (SSI) on July 13,

2021. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at

Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not

eligible for benefits because he was not under a "disability" as defined in the Social

Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff

subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award

of benefits or, in the alternative, for further proceedings. The Commissioner asks the

Court to affirm the non-disability decision. For the reasons set forth below, this Court

REVERSES the Commissioner's decision and REMANDS for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I.    BACKGROUND

Plaintiff asserts that he has been under a disability since May 2, 2018.[2] He was fifty-two years old on the SSI application date. Accordingly, Plaintiff was considered a "person closely approaching advanced age" under the Social Security regulations. *See* 20 C.F.R. § 416.963(d). Plaintiff has a limited education. *See* 20 C.F.R. § 416.964(b)(3).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 36-63), Plaintiff's Statement of Errors ("SE," Doc. No. 8), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 10), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 11). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

---

[2] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. Thus, the relevant period of consideration in this case begins on July 13, 2021. *See* 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 F. App'x 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [the plaintiff] filed his protective application.").

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 416.920.  The ALJ made the following findings of fact:

> Step 1:    Plaintiff has not engaged in substantial gainful activity since July 13, 2021, the SSI application date.

> Step 2:    He has the severe impairments of a Chiari malformation, mild degenerative disc disease of the cervical spine, bilateral cubital tunnel syndrome, degenerative joint disease of the shoulders, gastritis, anxiety, depression, and a neurocognitive disorder.

Step 3:      He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:      His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 416.967(b), with lifting and/or carrying twenty pounds occasionally and ten pounds frequently, subject to the following limitations: "He is limited to standing and/or walking about for about four hours per eight- hour workday and sitting for about six hours in an eight-hour workday. He is limited to no climbing of ladders, ropes, or scaffolds with occasional climbing of ramps and stairs. He is able to frequently balance, stoop, kneel, crouch, and crawl. He is limited to occasional reaching overhead bilaterally. He is able to frequently handle, finger, and feel bilaterally. He should avoid unprotected heights and dangerous machinery. He is able to perform simple, routine tasks but not at a production-rate pace and without strict performance quotas. He is limited to occasional superficial contact with coworkers and supervisors with "superficial contact" defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice. He is limited to no interaction with the general public. He is able to tolerate occasional changes to a routine work setting defined as one to two per week where the changes are explained in advance."

He is unable to perform any of his past relevant work.

Step 5:      Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.

(Decision, Doc. No. 7-2 at PageID 42-57.) These findings led the ALJ to conclude that

Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at

PageID 57-58.)

5

**B.      State Agency Medical Consultants**

State agency medical consultant Abraham Mikalov, M.D. completed a Disability

Determination Explanation form in June 2022. (AR, Doc. No. 7-3 at PageID 99-102.)

After summarizing the evidence that he reviewed (*id.* at PageID 100-01), Dr. Mikalov

concluded that the record contained insufficient evidence to assess Plaintiff's physical

condition, due to a finding of similar fault. (*Id.* at PageID 101.) Dr. Mikalov explained:

"The claim was referred to [Cooperative Disability Investigations Unit (CDIU)] for

Similar Fault investigation due to areas of conflict discovered during claim development.

The [Report of Investigation] was received 04/01/22 and the special determination has

disregarded information from [Plaintiff]. Therefore, there is insufficient evidence to fully

assess [Plaintiff's] physical conditions." (*Id.* at PageID 102.) Gail Mutchler, M.D.

reviewed the updated record at the reconsideration level in July 2022 and affirmed Dr.

Mikalov's assessment. (*Id.* at PageID 110-11.)

After considering the objections raised by Plaintiff's representative with respect to

the CDIU report, the ALJ found them well-taken and stated that "the CDIU report and

related conclusions were not considered in the decision-making process." (Decision, Doc.

No. 7-2 at PageID 39-40.) In the opinion analysis section of the decision, the ALJ

concluded that the state agency medical consultants' opinions were not persuasive.

(Decision, Doc. No. 7-2 at PageID 54.) The ALJ reasoned that their opinions were "not

supported by or consistent with the record, which demonstrates sufficient information to

find 'severe' physical impairments with related findings for the residual functional

capacity (Exhibits B1F-B15F)." (*Id.*)

### C.    Consultative Physician Amita Oza, M.D.

Amita Oza, M.D. performed a consultative physical examination in November 2021. (AR, Doc. No. 7-9 at PageID 898-904.) Dr. Oza reported that "it was difficult for [Plaintiff] to get to the Snellen's table and bend his neck as he cannot bend anything at his [cervical] spine. (*Id.* at PageID 898.) During a neurological and musculoskeletal examination, Dr. Oza documented strong and symmetrical grip strength bilaterally and full range of motion of the upper extremities. (*Id.* at PageID 899.) She also documented negative straight leg raising and full range of motion of the hips, knees, and left ankle. (*Id.*) However, the examination showed "hardly any range of motion" at the cervical spine. (*Id.*) Dr. Oza noted a surgical scar over the entire cervical spine and "a hole on the skull which is well healed." (*Id.*). Dr. Oza stated: "I could not obtain reflexes and he could not feel me touch." (*Id.*) The examination also documented decreased range of motion of the right ankle due to three previous fractures, slight weakness of the right great toe extensor, a wide-based gait, and positive Romberg's signs. (*Id.*) Dr. Oza observed that Plaintiff "is very ataxic even when he is seeing and he cannot walk in a straight line. He is holding onto things. He did not bring his walker here. Range of motion at [the lumbar spine] was not checked, as he is very unstable." (*Id.*)

In the Medical Source Statement section of the report, Dr. Oza wrote: "[Plaintiff] is a [fifty-two]-year-old right-handed male patient with a history of Arnold-Chiari malformation. He is status post surgery, but still has resultant ataxia, dizziness, [and] numbness in his hand and in lower extremities. Based on my examination today, work-related activities are affected at this time." (AR, Doc. No. 7-9 at PageID 899.)

The ALJ concluded that Dr. Oza's opinion was "somewhat persuasive." (Decision, Doc. No. 7-2 at PageID 55.) The ALJ explained that Dr. Oza's opinion was "vague with respect to what work-related activities were affected and the degree of those restrictions (Exhibit B10F/4)." (*Id.*) The ALJ further reasoned: "Nevertheless, when giving [Plaintiff] the full benefit of the doubt with respect to his subjective complaints, and considering his treatment history and findings on examinations throughout the record, restrictions for the residual functional capacity was [sic] warranted (Exhibits B1F-B15F)." (*Id.*)

## IV.    LAW AND ANALYSIS

Plaintiff asserts three errors: 1) the ALJ "purport[ed] to omit all conclusions related to the flawed CDIU report from his conclusions, but fail[ed] to acknowledge that the state agency's mental health reviewers considered the report"; 2) "the ALJ's physical RFC is unsupported and lacks foundation in creditable medical opinion evidence"; and 3) the ALJ erroneously "narrow[ed] the definition of 'superficial' as used by the state agency mental health consultants." (SE, Doc. No. 8 at PageID 1021.) For the reasons discussed below, the undersigned finds that Plaintiff's second assertion is well-taken and the ALJ's decision shall therefore be reversed and remanded. The Court does not address Plaintiff's other alleged errors and instead instructs the ALJ to address them on remand.

### A.    Applicable Law.

A disability claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 416.912. The burden is on a claimant to furnish medical and other evidence about his impairments and the effects of his impairments on the ability to work. *Id.*; *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d

8

532, 545 (6th Cir. 2007). At the same time, the ALJ bears the burden to "fully develop the record" upon which his decision rests. *Lashley v. Sec'y of Health and Hum. Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). This duty arises because "[s]ocial security proceedings . . . are inquisitorial rather than adversarial. It is the ALJ's duty to investigate facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). Significantly, "[a]n ALJ has a duty to develop the record even where, as here, the plaintiff was represented by counsel." *Chester v. Comm'r of Soc. Sec.*, No. 11-15353, 2013 WL 1122571, at *8 (E.D. Mich. Feb. 25, 2013), *report and recommendation adopted*, No. 11-15353, 2013 WL 1122564 (E.D. Mich. Mar. 18, 2013) (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993); 20 C.F.R. § 416.992(e)).

"[T]here is 'no bright line test' for determining whether the ALJ has failed to fully develop the record." *Anita Lynn H.-J. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-cv-025, 2022 WL 10686665, at *3 (S.D. Ohio June 23, 2022) (Silvain, M.J.) (citing *Lashley*, 708 F.2d at 1052)). Moreover, "[a] functional capacity opinion from a medical source may not be necessary in every case." *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008). However, a remand is warranted if the ALJ "makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that did not include consideration of a critical body of objective medical evidence." *Anita Lynn H.-J.*, 2022 WL 10686665, at *3 (citing *Kizys v. Comm'r of Soc. Sec.*, No. 3:10 CV 25, 2011 WL 5024866, at *1–3 (N.D. Ohio Oct. 21, 2011)). Indeed, this Court "has stressed the importance of medical opinions to support a claimant's RFC, and cautioned

9

ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data." *Mitsoff v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 693, 703 (S.D. Ohio 2013) (Rice, D.J.) (collecting cases).

It is true that "there are limited occasions when the medical evidence is so clear, and so undisputed, that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a medical source." *Mitsoff*, 940 F. Supp. 2d at 703 (citing *Deskin*, 605 F. Supp. 2d at 912). But this exception applies only if "the evidence shows relatively little physical impairment" such that the ALJ can "render a commonsense judgement about functional capacity even without a physician's assessment." *Deskin*, 605 F. Supp. 2d at 912. In all other cases, the ALJ must develop a complete record by "utilizing the tools provided in the regulations for ordering additional opinion evidence, such as 'recontact[ing] the treating source, order[ing] a consultative examination, or hav[ing] a medical expert testify at the hearing.'" *Anita Lynn H.-J.*, 2022 WL 10686665, at *3 (citing *Deskin*, 605 F. Supp. 2d 908 at 912). The "key inquiry" in these circumstances is whether the ALJ "fully and fairly developed the record through a conscientious probing of all relevant facts." *Bryant v. Comm'r of Soc. Sec.*, No. 3:15-cv-354, 2017 WL 489746, at *4 (S.D. Ohio Feb. 7, 2017) (Newman, M.J.) (citation omitted), *report and recommendation adopted sub nom.*, *Bryant v. Berryhill*, No. 3:15-cv-354, 2017 WL 713564 (S.D. Ohio Feb. 22, 2017) (Rice, D.J.).

**B.     The ALJ's RFC Is Unsupported By Substantial Evidence.**

As noted above, state agency medical consultants Dr. Mikalov and Dr. Mutchler reviewed the record in June 2022 and July 2022, respectively, and found insufficient

evidence to evaluate Plaintiff's physical impairments. (AR, Doc. No. 7-3 at PageID 99-102, 110-11.) The ALJ found these assessments to be persuasive, explaining that there was sufficient information in the record to assess Plaintiff's physical impairments and limitations. (Decision, Doc. No. 7-2 at PageID 54.) The only other opinion in the record relating to Plaintiff's physical impairments and functioning is from consultative physician Dr. Oza, who opined that Plaintiff's work-related activities were "affected." (AR, Doc. No. 7-9 at PageID 899.) Reasoning that this opinion was "vague with respect to what work-related activities were affected and the degree of those restrictions," the ALJ found this opinion to be only "somewhat persuasive." (Decision, Doc. No. 7-2 at PageID 55.)

The Court agrees with Plaintiff that the ALJ failed to meet his burden to develop the record and, further, that his findings lack a reasonable foundation because no medical evidence supports the RFC. The state agency consultants did not opine about Plaintiff's functioning, citing insufficient evidence to evaluate Plaintiff's physical condition. Dr. Oza's opinion provided no details about the degree of Plaintiff's impairments and work-related limitations. This medical opinion evidence does not provide substantial evidence in support of the RFC. *See Roe v. Colvin*, No. 1:13-cv-1065 GLS, 2015 WL 729684, at *4 (N.D.N.Y. Feb. 19, 2015) ("a physician's opinion which is so vague as to prevent the ALJ to bridge the gap between a claimant's impairments and the functional limitations that flow from those impairments is useless") (citing *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other grounds*, 20 C.F.R. § 416.960(c)(2)).

Given the paucity of medical opinion evidence in the record that addressed Plaintiff's physical impairments and functional limitations, the ALJ should have

11

recontacted the consultative examiner, obtained the opinion of a medical expert, or

otherwise sought additional medical opinion evidence regarding Plaintiff's functional

limitations before he formulated the RFC. *See Anita Lynn H.-J.*, 2022 WL 10686665, at

*5 (citing *Gentry v. Comm'r of Soc. Sec.*, No. 1:17 CV 1182, 2018 WL 4305213, at *5

(N.D. Ohio Sept. 10, 2018)); *see also* 20 C.F.R. § 416.919p(b) ("If the report [of the

consultative examination] is inadequate or incomplete, we will contact the medical source

who performed the consultative examination, give an explanation of our evidentiary

needs, and ask that the medical source furnish the missing information or prepare a

revised report."). Because the ALJ failed to do so, his RFC is unsupported by substantial

evidence. *See Hinterberger v. Comm'r of Soc. Sec.*, No. 1:19-CV-00553(JJM), 2020 WL

4434920, at *4 (W.D.N.Y. Aug. 3, 2020) ("[I]t is difficult to discern how [the ALJ], as a

layperson, properly formulated the RFC from the record, which lacked any other useful

assessments of plaintiff's [physical] functional limitations.").

Defendant argues that the ALJ is ultimately responsible for weighing the evidence

and assessing Plaintiff's RFC, and that the RFC did not need to correspond to a particular

medical opinion. (Mem. In. Opp., Doc. No. 10 at PageID 1039-42 (citing *Rudd v.*

*Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013); *Coldiron v. Comm'r of Soc.*

*Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010); *Clemow v. Comm'r*, No. 1:16-cv-994, 2018

WL 1083494 at *8 (S.D. Ohio Feb. 28, 2018) (Bowman, M.J.); *Wright v. Comm'r of Soc.*

*Sec.*, No. 2:19-cv-1124, 2020 WL 5651540 (S.D. Ohio Sept. 9, 2020) (Preston Deavers,

M.J.).) But Plaintiff does not argue that the ALJ's RFC must correspond with a particular

medical opinion, or that the ALJ must rely on a medical opinion to formulate the RFC.

Instead, Plaintiff argues that "the ALJ interpreted a critical body of objective medical data and evidence in functional terms that was not even reviewed by any medical source of record." (Reply, Doc. No. 11 at PageID 1050.) Defendant's arguments do not squarely address this contention.

Moreover, the cases cited by Defendant are distinguishable. The ALJ in *Rudd* was able to consider medical opinions of a state agency medical consultant and a physician who reviewed records from other providers at his practice.[3] 531 F. App'x at 727-29. The ALJ in *Coldiron* was able to consider medical opinions of three treating and examining physicians, as well as the assessments of two state agency physicians to assess the physical RFC limitations. 391 F. App'x at 439, 441. In *Clemow*, the ALJ had the benefit of reviewing medical opinions of a consultative physician and two treating physicians to evaluate the plaintiff's physical impairments and limitations. 2018 WL 1083494 at *5. And the ALJ in *Wright* considered medical opinions of a treating physician assistant, state agency medical consultants, and a consultative physician to formulate the plaintiff's physical RFC. 2020 WL 5651540 at *2-4, 7.

Therefore, unlike the ALJ in this case, the ALJs in Defendant's cited cases could rely on medical source opinions along with other evidence "as a guide to peg a residual functional capacity finding." *See Kizys v. Comm'r of Soc. Sec.*, No. 3:10 CV 25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011) (citing *Henderson v. Comm'r of Soc. Sec.*, No. 1:08 CV 2080, 2010 WL 750222, at *1 (N.D. Ohio Mar. 2, 2010)). Here, by contrast,

---

[3] Plaintiff was treated at physician's office on four occasions during a two-year period, but the treatment notes did "not establish that [the physician] ever examined [him]." *Rudd*, 531 F. App'x at 729.

the limited nature of the medical opinion evidence meant that the ALJ effectively made

"a finding of work-related limitations based on no medical source opinion." *Susan T. v.*

*Comm'r of Soc. Sec.*, No. 3:22-cv-41, 2023 WL 2594989, at *8 (S.D. Ohio Mar. 22,

2023) (Preston Deavers, M.J.) (citing *Anita Lynn H.-J.*, 2022 WL 10686665, at *3).

The Court further concludes that the record does not show "relatively little

physical impairment," which might permit the ALJ to "render a commonsense judgement

about functional capacity even without a physician's assessment." *Deskin*, 605 F. Supp.

2d at 912. On the contrary, the evidence in the record shows that Plaintiff was treated for

several significant physical conditions.

An April 2018 brain MRI showed findings that included a protrusion of the

cerebellar tonsils through the foramen magnum with a Chiari malformation. (AR, Doc.

No. 7-7 at PageID 407.) A June 2018 cervical spine MRI showed low-lying cerebellar

tonsils compatible with a Chiari one malformation, and an abnormal MRI of the cerebral

spinal fluid confirmed a Chiari one malformation. (*Id.* at PageID 382.) The cervical spine

MRI also showed mild to moderate discogenic changes. (*Id.*) Plaintiff underwent a

decompressive suboccipital craniotomy with laminectomy of the first cervical lamina in

January 2019. (*Id.* at PageID 360.) Following surgery, Plaintiff's neurosurgeon

prescribed, among other things, a walker with front wheels and a shower chair. (*Id.* at

PageID 358, 361.)

Cervical spine imaging that was taken in April 2019 showed anterolisthesis at

several levels. (AR, Doc. No. 7-7 at PageID 354.) During a neurology follow-up visit in

May 2019, Plaintiff reported an increase of the Chiari symptoms that had previously

resolved during the immediate post-operative period. (AR, Doc. No. 7-7 at PageID 354.)

Plaintiff complained of difficulty swallowing, neck pain and stiffness, balance issues, and

intermittent dizziness and numbness. (*Id.* at PageID 353.) In January 2020, Plaintiff

complained of worsening symptoms that included neck pain that radiated to his left

shoulder and arm, headaches, pain behind his eyes, vertigo, and blackout spells. (*Id.* at

PageID 432.) A cerebrospinal fluid study later that month showed minimal Chiari

decompression, and an MRI of the cervical spine showed mild multilevel spondylosis.

(AR, Doc. No. 7-9 at PageID 856.)

When Dr. Oza examined Plaintiff a few months after the SSI application date in

November 2021, she observed that Plaintiff exhibited "hardly any range of motion" at the

cervical spine, and she could not obtain reflexes. (AR, Doc. No. 7-9 at PageID 899.) Dr.

Oza also documented decreased range of motion of the right ankle due to three previous

fractures, slight weakness of the right great toe extensor, a wide-based and "very ataxic"

gait, and positive Romberg's signs. (*Id.*) Further, Dr. Oza stated that Plaintiff "was

holding onto things" and that she did not check Plaintiff's lumbar spine range of motion

because he was "very unstable." (*Id.*) According to Dr. Oza, Plaintiff "still has resultant

ataxia, dizziness, [and] numbness in his hand and in lower extremities." (*Id.*)

Plaintiff also began complaining of a painful hand lesion and drainage from his

head in June 2022. (AR, Doc. No. 7-10 at PageID 1004-06.) Plaintiff saw a hand surgeon

in August 2022, and the examination showed decreased sensation in the ulnar nerve

distribution, positive Tinel signs at the elbow, and positive flexion testing in the bilateral

upper extremities. (*Id.* at PageID 1011.) The provider diagnosed "likely bilateral cubital tunnel syndrome" and a left wrist carpal boss. (*Id.* at PageID 1012.)

Because this evidence shows "significant and complex overlapping of [Plaintiff's] multiple impairments," the Court finds that the ALJ erred by "substituting his own lay judgement on matters that should have been addressed by a medical opinion." *Susan T.*, 2023 WL 2594989, at *8. Indeed, a medical opinion is "absolutely critical to properly evaluate [P]laintiff's impairments, symptoms, and functional limitations" in this case. *See Harris,* 2016 WL 8114128, at *10. But as stated above, the record contained no useful medical opinion related to Plaintiff's physical impairments and functional limitations.

As explained above, the ALJ "could have solicited the opinion of a medical expert, ordered an additional consultative exam, or sent the MRIs, surgical records, and other records back to [the state agency reviewing physicians] for an updated assessment. However, no such steps were taken." *Mitsoff*, 940 F. Supp. 2d at 702. Instead, the ALJ "impermissibly relied on [his] own interpretation of the medical data of record." *Id.* at 703. Because the RFC determination is not supported by substantial evidence, the ALJ's decision shall be remanded. *Id.*; *see also Anita Lynn H.-J.*, 2022 WL 10686665, at *5.

## V.   REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041

16

(6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the opinion evidence related to Plaintiff's physical limitations, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for SSI should be granted.

**IT IS THEREFORE ORDERED THAT**:

1.　　Plaintiff's Statement of Errors (Doc. No. 8) is GRANTED;

2.　　The Court REVERSES the Commissioner's non-disability determination;

3.　　No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.　　This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.      This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge
